**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| LESLYN WEATHERS, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No. 2:06-CV-1420-RDP** |
| | } | |
| UAB MEDICAL WEST, et al., | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

The court has before it Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. # 15), filed on January 5, 2007. The motion was fully briefed and under submission, without oral argument, as of February 9, 2007.

Plaintiff Leslyn Weathers' complaint against Defendants UAB Medical West (hereinafter "UABW," also known as The Healthcare Authority for Medical West, an affiliate of UAB Health System), and Timothy J. Thornton ("Thornton") asserts six separate causes of action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*: (1) violation of ERISA § 502(a)(1)(B) for an alleged arbitrary and capricious failure to contribute to the Pension Plan according to its provisions; (2) violation of ERISA §§ 404, 409 & 502(a)(2) for an alleged breach of fiduciary duty; (3) equitable relief under ERISA § 502(a)(3); (4) violation of ERISA § 510 for the alleged unlawful discharge of Plaintiff in retaliation for exercising her rights under ERISA; (5) violation of ERISA § 204(g) for an alleged improper amendment to the Plan without approval of the United States Secretary of Labor; and (6) violation of ERISA § 204(h) for an alleged improper amendment to the Pension Plan without written notice to participants. (Doc. # 1 ¶¶ 26-45).

Defendants' motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(1), requests dismissal of all of Plaintiff's claims on the grounds that Plaintiff lacks standing to bring suit under ERISA and thus this court lacks subject matter jurisdiction over Plaintiff's claims.[1]  For the reasons outlined below, Defendants' motion is due to be denied.

I.      **Background and Relevant Facts**

Plaintiff is a former employee of UABW, a hospital providing a wide range of medical services to patients with its principal place of business located in Bessemer, Alabama.  (Thornton Decl., ¶ 5, 13; Doc. # 1 at ¶ 4).  Beginning in approximately 1975, UABW began maintaining a pension plan that is now known as the UAB Medical West Pension Plan (the "Pension Plan" or the "Plan").  Defendant Thornton, Chief Executive Officer of UABW, is the current Plan Administrator of the Pension Plan.  (Thornton Decl., ¶¶ 4, 6).  UABW makes contributions to the Pension Plan based on a percentage of each participant's "compensation" - as defined by the Pension Plan - in any given Plan year.  (Thornton Decl., ¶ 7).  In the years following the Plan's creation, it has been amended and restated in a series of adoption agreements executed by UABW.

Beginning in 1983, UABW also began sponsoring a Sick/Bereavement Leave Program (the "Sick Pay Plan"), pursuant to which UABW credits full-time employees with sick and bereavement leave accruing at a rate of .0462 hours for each paid work hour, up to a maximum of 96 benefit hours per year, and a maximum total accumulation of 480 hours.  (Thornton Decl., ¶ 8).  Pursuant to the Sick Pay Plan, employees are able to carry forward, within certain limits, unused accrued sick and

---

[1] Although Defendants' motion also states that it requests, in the alternative, that the court dismiss with prejudice all claims on behalf of a "class" of individuals under Federal Rule of Civil Procedure 23, all claims for damages for breach of fiduciary duty and retaliation, and all claims against Defendant Thornton (Doc. # 15), these requests are not discussed in detail in Defendants' brief (Doc. # 16). Accordingly, the court will not consider them as part of its analysis here.

bereavement hours from year to year.  (Thornton Decl., ¶ 9).  For example, if an employee accrued and did not use more than six (6) days of sick and bereavement leave during the year, she could elect either to carry forward to the next year, or to sell back to the Hospital, the accrued and unused hours in excess of six (6) days, subject to the maximum total accumulation of 480 hours.  (Thornton Decl., ¶ 9).  If the employee elected to sell back to the Hospital those hours of accrued but unused sick and bereavement leave, she received a lump-sum payment for such leave at the end of the year in which it was accrued ("buy back" payments).  (Thornton Decl., ¶ 9).

According to Plaintiff, from the inception of the Pension Plan, UABW defined "compensation" as the money actually paid to an employee while employed by UABW.  (Doc. # 1, at 3).  Defendants assert that, from the inception of the Pension Plan, the Plan Administrator did not consider elective "buy back" payments under the Sick Pay Plan to be employee "compensation" earned during the Plan year for purposes of the Pension Plan.  (Thornton Decl., ¶ 10).  Both parties agree that during the relevant time period, UABW never made percentage contributions to the Pension Plan for these "buy back" payments.  (Thornton Decl., ¶ 10; Doc. # 1).

Effective August 1, 2003, the Hospital issued a Plan amendment stating that "buy back" payments under the Sick Pay Plan were excluded from the category of "compensation" based upon which contributions to the Plan were calculated.  (Doc. # 1, at 4).  According to Defendants, the 2003 clarification merely confirmed the existing practice with respect to benefits contributions (*i.e.*, excluding year end, elective lump-sum payments for the repurchase of accrued and unused leave under the Sick Pay Plan), and the Plan Administrator's historical interpretation.  (Thornton Decl., ¶ 11).  Plaintiff contends the 2003 amendment was just that - an amendment changing the terms of the plan to exclude sick/bereavement compensation from the category of Plan-defined

3

"compensation" upon which contributions were based. (Doc. # 1, at 4). Plaintiff also claims that "notice of this amendment to the Plan and its effects upon UAB's contributions to the Plan was not provided to each employee." (Doc. # 1, at 4).

While employed with UABW, Plaintiff was eligible to participate in the Pension Plan. Plaintiff did so, and accrued benefits in accordance with her hours worked and level of compensation. (Thornton Decl., ¶ 14). According to Plaintiff's complaint, in 2002, she "complained to Mr. Thornton, who was then Chief Financial Officer for UAB, about UAB's failure to include year-end sick/bereavement compensation in the calculations for contributions to the Plan." (Doc. # 1, ¶ 10). Plaintiff further alleges that she "complained again in 2005, upon Mr. Thornton's appointment as CEO of UAB, about the Company's failure to factor in year-end sick/bereavement leave compensation for the contributions it made to the Plan." (Doc. # 1, ¶ 13). Plaintiff's employment was terminated by UABW on August 17, 2005. (Thornton Decl., ¶ 15). She claims in this lawsuit that "UAB and Mr. Thornton terminated Ms. Weathers's employment in August 2005 due to her complaints about the Company's contributions to the Plan." (Doc. # 1, ¶ 13).

At the time of Plaintiff's August 2005 termination, she had accrued pension benefits under the Pension Plan with a total value of $216,071.37. (Thornton Decl., ¶ 16, Ex. 1). On February 3, 2006, pursuant to the terms of the Pension Plan, Plaintiff requested a one-time, lump-sum cash distribution of her total accrued pension benefits under the Pension Plan. (Thornton Decl., ¶ 17, Ex. 2). She requested that this cash payment be "rolled over" into an individual retirement account ("IRA") in Plaintiff's name maintained with the Charles Schwab investment firm. (Thornton Decl., ¶ 17, Ex. 2).[2] On February 14, 2006, a check was issued by Massachusetts Mutual Financial Group,

---

[2] Plaintiff requested the cash distribution of her total accrued benefits under the Pension Plan

trustee of the Pension Plan, to "Charles Schwab fbo Leslyn D. Weathers #817-7600" in the amount of $218,135.11, representing a one-time, lump-sum cash distribution of Plaintiff's total accrued pension benefits, plus interest, under the Pension Plan.  (Thornton Decl., ¶ 18, Ex. 3).  This check was mailed to Plaintiff's home on February 21, 2006, and Plaintiff signed for the check on February 22, 2006. (Thornton Decl., ¶ 18, Ex. 4).   Thereafter on July 21, 2006, Plaintiff filed the complaint in this case.

## II.    Standards of Review and Relevant Legal Principles

It is axiomatic that, as a threshold matter, this court must examine whether it has subject matter jurisdiction over Plaintiff's claims in this case.  *FW/PBS v. Dallas*, 493 U.S. 215, 231 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction."). Standing, which originates from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies, "directly implicates federal subject matter jurisdiction," *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F. 3d 1263, 1272 (11th Cir. 2003), because it "presents the . . . question of whether a court may consider the merits of a dispute,"  *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006).   If standing is absent, "a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims."  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005).[3]

The Supreme Court has defined a two-prong test for standing that takes into account "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."

---

in the form of a check made payable to "Charles Schwab fbo Leslyn D. Weathers #817-7600." (Thornton Decl., ¶ 17, Ex. 2).

[3] Standing must exist at all stages of a lawsuit.  *E.g., Sanchez-Velasco v. Sec'y of Dept. of Corrections*, 287 F.3d 1015, 1026 (11th Cir. 2002).

*Warth v. Seldin*, 422 U.S. 490, 498 (1975).  It is the constitutional arm of this test that is at issue here.[4]  It requires: (1) an injury-in-fact, meaning an injury that is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and the causal conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *See Bennett v. Spear*, 520 U.S. 154, 167 (1997).  The "party invoking federal jurisdiction bears the burden of proving standing." *Bischoff v. Osceola County*, 222 F.3d 874, 878 (11th Cir. 2000).  Courts "should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none . . . . If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229-30 (11th Cir. 2000).

"Because a motion to dismiss for lack of standing is one attacking the district court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)."  *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 808 (11th Cir. 1993); *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 983 (11th Cir. 1990) ("Standing . . . properly is the basis to dismiss the complaint if it is found to be lacking.").  In this Circuit, attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms with two different standards of review:   (1) "facial attacks" on the complaint, which "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the

---

[4] The prudential considerations of standing - a plaintiff cannot raise the claims of third parties; cannot claim standing based on a generalized grievance; and must raise a claim within the zone of interest covered by a statutory conferral of standing -  are not in dispute in this case. *Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Bennett v. Spear*, 520 U.S. 154, 162 (1997).

purposes of the motion," *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980); and (2) "factual attacks," which challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Menchaca*, 613 F.2d at 511.

Defendants' 12(b)(1) motion, which challenges Plaintiff's standing as a "participant" to bring her claims under ERISA in this case, falls into the latter category because it factually challenges this court's subject matter jurisdiction.[5]  Thus, this court

> may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56.  Because at issue
> in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the
> case - there is substantial authority that the trial court is free to weigh the evidence
> and satisfy itself as to the existence of its power to hear the case. In short, no
> presumptive truthfulness attaches to plaintiff's allegations, and the existence of
> disputed material facts will not preclude the trial court from evaluating for itself the
> merits of jurisdictional claims.

*Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir.1981); *see also Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  In conducting this review, the court is "obliged to consider not only the pleadings, but to examine the record as a whole to determine whether [it is] empowered to adjudicate the matter at hand." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir.2003); *see also Region 8*, 993 F.2d at 806**.**  Nonetheless, the Eleventh Circuit has cautioned that, when considering factual Rule 12(b)(1) attacks on subject matter jurisdiction, "[w]here the

---

[5] Although the court's opinion *infra* cites with approval to portions of Judge Posner's opinion in *Harzewski v. Guidant Corp.*, 489 F.2d 799 (7th Cir. 2007), *see infra* page 18, the court declines to adopt his reasoning that "the question of whether an ERISA plaintiff is a 'participant' entitled to recover benefits under the Act should be treated as a question of statutory interpretation fundamental to the merits of the suit rather than as a question of [standing or] the plaintiff's right to bring the suit." *Harzewski*, 489 F.2d at 804.  Because the issue of ERISA standing was raised by Defendants as an issue of subject matter jurisdiction, the court will treat it as such here.  However, the court notes that in this case, it is apparent that the "jurisdictional issues are intertwined with the substantive merits." *Eaton*, 692 F.2d at 733.

jurisdictional issues are intertwined with the substantive merits, the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other." *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 733 (11th Cir. 1982) (internal citations omitted).

### III.    Substantive Discussion of Defendants' Motion

The broad dispute at issue in Defendants' motion is whether Plaintiff is a "participant" under ERISA and accordingly, whether she has standing to bring this action.  ERISA provides remedies to only a limited class of persons:  "A civil action may be brought . . . by a *participant* or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B) (emphasis added).[6]  29 U.S.C. § 1002(7) defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer."  29 U.S.C. § 1002(7). According to the Supreme Court, "participants" fall into three categories:  (1) current employees in covered employment; (2) former employees who have a reasonable expectation of returning to covered employment; and (3) former employees who have a colorable claim to vested benefits. *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 117-18 (1989).[7]

---

[6]  The parties' arguments are limited to the discussion of whether Plaintiff qualifies as a "participant" of the Plan. The parties apparently are in agreement that Plaintiff was not a "beneficiary" of the Pension Plan during her employment with UABW nor does she currently qualify as a "beneficiary" entitled to any benefits under the Pension Plan.

[7]  The Court explained:

In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.  "This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may

In this case, the parties agree that Plaintiff is not a current employee and thus does not fall into the first - and most obvious - category of participants.  At the time Plaintiff filed her complaint, she was no longer an employee of UABW as her employment was terminated on August 17, 2005. (Thornton Decl., ¶ 15).  Therefore, the crux of the parties' dispute regarding standing is whether Plaintiff is a former employee with either a reasonable expectation of returning to covered employment or a colorable claim to vested benefits.  Plaintiff need not demonstrate both options to establish subject matter jurisdiction – if she falls into either category, then she is a "participant" in the Plan and has standing to bring her claims against Defendants.  As outlined below, the court finds that, applying the proper standards of review to Defendants' motion, Plaintiff has standing to bring her claims in this case under both of the above-referenced categories of "participants."

### A.    Reasonable Expectation of Return to Covered Employment

The court first analyzes whether Plaintiff has a "reasonable expectation of returning to covered employment."  *Firestone*, 489 U.S. at 117-18.  Defendants maintain that Plaintiff cannot reasonably expect to return to a position with UABW given that her employment was terminated for cause and she is not eligible for rehire.  Plaintiff points out that, to the contrary, she has sought re-employment with UABW by requesting reinstatement in her complaint as relief for UABW's decision to terminate her employment, which she alleges was in violation of § 510 for complaining

---

become eligible.'  A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.'"

*Firestone Tire*, 489 U.S. at 117-18 (quoting *Saladino v. I.L.G.W.U. National Retirement Fund*, 754 F.2d 473, 476 (2nd Cir.1985)).

about ERISA violations.  (Doc. # 1, ¶ 47(h); *see Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1241-42 (11th Cir. 1989)).

Notably, Defendants do not argue that Plaintiff's request for reinstatement is unreasonable because reinstatement is disallowed under the court's remedial and equitable powers under ERISA. Thus, Defendants do not challenge that this court could effectively return Plaintiff to covered employment if she prevails on her claims.  Rather, relying on a Tenth Circuit case, *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1537 (10th Cir. 1993), Defendants maintain that "there is a clear difference between seeking equitable reinstatement as a remedy under ERISA, and seeking to enforce a contractual or legal right to reinstatement in other contexts," and they effectively ask this court to adopt a *per se* rule that a request for equitable reinstatement cannot confer upon Plaintiff a *reasonable* expectation of returning to employment.  (Doc. # 16, at 14-16) (citing *Raymond*, 983 F.2d at 1537).  Even if Defendants have correctly interpreted the holding of *Raymond*,[8] the Eleventh Circuit has not directly addressed this matter, and this court declines to establish such a bright line rule in this case.  There is simply no precedent in this Circuit for this court to pronounce that as a

---

[8] The Tenth Circuit carefully pointed out in *Raymond* that prior case law in the Tenth Circuit had not established "any per se rule concerning the effect of a request for judicial reinstatement." *Raymond*, 983 F.2d at 1537.  Accordingly, the court in *Raymond* limited their holding regarding the effect of a request for judicial reinstatement to the particular facts involved in that case:

> We hold as a matter of law that a reasonable expectation of returning to covered employment cannot encompass the undisputed situation here, where plaintiffs retired, received all their vested benefits, did not ask their employer for reinstatement and can point to nothing suggesting that Mobil will, should or must reinstate them, but instead filed suit seeking reinstatement to commence accruing benefits anew.

*Raymond*, 983 F.2d at 1537.  Given the limited holding of *Raymond*, its application is easily distinguished from the facts of this case.  Plaintiff in the instant case was terminated - she did not retire - and unlike the plaintiffs in *Raymond*, she alleges that she did not receive all of her vested benefits. In any event, as discussed above, *Raymond* is not binding on this court.

matter of law, and without regard to the merits of a plaintiff's request for reinstatement, a request for reinstatement in a judicial complaint does not confer upon a plaintiff a reasonable expectation of return to covered employment.

Thus, in the absence of a clear rule of law establishing that such a request either does, or does not, confer standing on a plaintiff regardless of the merits of the request, this court is left to ponder the strength of Plaintiff's § 510 claim in this case – can Plaintiff reasonably expect to succeed on the facts of her § 510 claim so that this court would grant her request for reinstatement and order her return to covered employment?   Obviously, such an inquiry is inextricably tied to the merits of Plaintiff's case.  That is, if it is more than likely that Plaintiff would eventually lose on the merits, then she would not have a reasonable expectation of returning to employment.  If Plaintiff, however, has a strong case on the merits, then she would satisfy the reasonable expectation requirement. Therefore, the question of whether Plaintiff is a "participant" with a reasonable expectation of returning to employment - and thus whether she has standing to bring her claims to give this court subject matter jurisdiction - is "inextricably intertwined" with the merits of the lawsuit given that a decision on one would effectively decide the other. *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 734 (11th Cir.1982).

Of course, practically, this court cannot simply peek behind the curtain at this early stage of the case to determine whether Plaintiff will eventually prevail.  Indeed, such hypothesizing about the success of Plaintiff's claims on the merits is exactly what this Circuit has discouraged in other non-ERISA cases when the pertinent inquiry will resolve both the question of subject matter jurisdiction and a necessary element of the Plaintiff's claim:

11

>[T]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.... Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion.... [A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action. The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.

*Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981).[9]  So long as the plaintiff has made a "fairly substantial showing of subject matter jurisdiction," when a jurisdictional motion to dismiss is "functionally an indirect attack on the merits of the plaintiff's claim, . . . it is incumbent upon the trial judge to demand less in the way of jurisdictional proof than would be appropriate at a trial stage." *Lawrence v. Dunbar*, 919 F.2d 1525, 1531 (11th Cir. 1990) (internal quotations and citations omitted).  Although this Circuit has not directly applied these principles of law to subject matter jurisdiction challenges in ERISA cases, other Circuits have applied the same standard of review when the merits of an ERISA claim overlap with issues of jurisdictional standing and have opted to "assume jurisdiction when statutory standing and merits questions converge." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 443-44 (6th Cir. 2006); s*ee also Morelli v. Cedel*, 141 F.3d 39, 46 (2d Cir. 1998) (declining examination of the issue whether plaintiff had a reasonable expectation of returning to work until the trial court resolved the plaintiff's Age Discrimination in Employment Act claim for reinstatement); *Christopher v. Mobil Oil*, 950 F.2d 1209, 1222 (5th Cir. 1992) ("[T]he

---

[9]*See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (finding that decisions of the Fifth Circuit, as that court existed on September 30, 1981, are binding precedent for all courts sitting on the Eleventh Circuit).

Case 2:06-cv-01420-RDP   Document 23   Filed 09/19/07   Page 13 of 22


standing question and the merits of an employee's claim are unavoidably intertwined to some degree
. . . .").

Of course, the Eleventh Circuit has made clear that even if issues of jurisdiction are inextricably intertwined with the merits of Plaintiff's case, it would nonetheless be *inappropriate* for this court to exercise jurisdiction if Plaintiff has asserted claims solely to obtain jurisdiction, if her claims are wholly insubstantial, or if her claims are plainly foreclosed by prior precedent. *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 734 (11th Cir. 1982).   Such is not the case here. After a careful review of Plaintiff's allegations supporting her § 510 retaliation claim (29 U.S.C. § 1140) and the evidence regarding this claim presented to the court as part of Defendants' motion, and without inappropriately prejudging or expounding upon the merits of this claim,  the court finds that Plaintiff's § 510 claim and her requested relief of reinstatement are not wholly insubstantial nor plainly foreclosed under the law of this Circuit.   Therefore, at this time, and pursuant to the applicable standards of review, Plaintiff has sufficiently shown that she has a reasonable expectation of returning to covered employment to invoke standing for her ERISA claims under the second prong set forth by the Supreme Court in *Firestone*.  *Firestone*, 489 U.S. at 117-18.

**B.     Colorable Claim to Vested Benefits**

As noted above, the court finds that, for the purpose of Defendants' motion to dismiss, Plaintiff does have a reasonable expectation of returning to covered employment.  Although this finding effectively resolves the standing issues, the court will also independently consider Defendants' argument that Plaintiff lacks standing because, under the third *Firestone* category of "participants," she has not made a colorable claim to vested benefits. *Firestone*, 489 U.S. at 117-18. Defendants maintain that Plaintiff has no "colorable claim to vested benefits" because: (1) Plaintiff

has already accepted a lump-sum distribution of all her accrued benefits under the Pension Plan; (2) Plaintiff's claims in the current lawsuit are solely for damages for alleged improper management of the Plan; and (3) Plaintiff accepted this lump-sum distribution with full knowledge of the Plan Administrator's interpretation to exclude the contributions on which her claims are based.  (Doc. # 16).  As outlined below, the court is not persuaded by Defendants' logic and therefore finds in the alternative that Plaintiff has standing under this prong as well.  The court will consider each contention related to that prong in turn.

### 1.    Plaintiff's Receipt of a Lump-sum Distribution of Benefits

The court rejects Defendants' initial argument that, from their point of view, Plaintiff has no claim for vested benefits because she has already received a lump-sum distribution from her former employer's benefit plan.  While it is true that a former employee who has "collected all vested benefits" should not have standing under ERISA because that person has no remaining claim to any vested benefits, *see, e.g.*, *Crawford v. Lamantia*, 34 F.3d 28, 32-33 (1st Cir. 1994), that is not the case here, at least according to the evidence before the court at this time.  Plaintiff has alleged in her complaint, and vigorously reiterates in her brief in support of standing, that Defendants have not yet paid the full sum of vested benefits to which she is entitled under the terms of the Plan.  (*See* Complaint, ¶¶ 9-11, 13, 27, 30; Doc. # 18, at 2-4, 6, 19.)  Plaintiff, based upon her interpretation of the Plan's terms, avers an entitlement to additional contributions that were not included in her lump-sum distribution.  In other words, Plaintiff seeks additional vested benefits that she believes she was entitled to at, or before, the time of her termination but that were not disbursed to her because they were "wrongly computed" by Defendants.  (Doc. # 18, at 6).

Given these facts, the court finds that even though it is undisputed that Plaintiff has accepted a lump-sum distribution of at least *some* of her accrued benefits, Plaintiff has made a colorable claim to *additional* vested benefits in this case and thus falls within the third *Firestone* category of "participants" who have standing to sue.   At best, Plaintiff's allegation that her lump-sum distribution did not include all accrued benefits because the Plan Administrator had wrongly computed the benefits she was owed states - *as a matter of law* - a claim for *additional* vested benefits.  *See, e.g., Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 350 (5th Cir. 1989)) ("Clearly, a plaintiff alleging that [her] benefits were wrongly computed has a claim for vested benefits."); *Graden v. Conexant Systems Inc.* --- F.3d ----, 2007 WL 2177170, at * 3 (3d Cir. 2007) ("ERISA entitles individual-account-plan participants not only to what *is* in their accounts, but also to what *should be* there given the terms of the plan and ERISA's fiduciary obligations [and] . . . . in the absence of any fiduciary mismanagement.").  At least one other Circuit, citing to Eleventh Circuit precedent, has found as a matter of law that an allegation of wrongful computation of promised benefits establishes ERISA standing because it is a claim for vested benefits.  *See Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 791 (7th Cir.1996)(citing *Willett v. Blue Cross & Blue Shield*, 953 F.2d 1335, 1342-43 (11th Cir.1992) and holding that "standing is available to any former employee who has a colorable claim to benefits which the employer promised to provide pursuant to the employment relationship and which a non-frivolous argument suggests have accrued to the employee's benefit.").

In any event, even assuming that Plaintiff's wrongful computation allegations do not state a claim for vested benefits as a matter of law, the court finds that at least Plaintiff has stated a *colorable* claim for vested benefits.  Plaintiff has alleged that pursuant to the terms of the Plan – at

least prior to the 2003 amendment – sick/bereavement compensation was or should have been included in the category of Plan-defined "compensation" upon which contributions were based and thus her benefits were wrongly computed.  (Doc. # 1, at 4).    Defendants disagree that sick/bereavement compensation should have been - or ever was - included in the Plan terms, and they maintain that the 2003 amendment merely clarified the already-established practice of excluding sick/bereavement compensation from the calculation of Plan contributions.  (Thornton Decl., ¶ 11). Thus, it is clear that the parties dispute whether Plaintiff has received all of her vested benefits pursuant to the terms of the Plan - a matter which directly implicates the ultimate issue to be decided on the merits in this case.   In such a situation, as outlined above, "federal claims should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact."  *Lawrence v. Dunbar*, 919 F.2d 1525, 1531 (11th Cir. 1990).  Thus, under either the best-case scenario for Plaintiff (she has stated a claim for vested benefits as a matter of law) or the worst-case scenario (she merely has stated a colorable claim), the court finds that Plaintiff has established, at this time, standing under the *Firestone* third category of "participants."[10]

---

[10] Accordingly, the court need not reach Defendants' argument that seeks to undermine any claim by Plaintiff that she fits into a narrow "but for" exception to the general rule that plaintiffs who have previously received a lump-sum distribution of accrued benefits lack standing to sue under ERISA.  (*See* Doc. # 16, at 40-48).  Defendants devote a substantial portion of their brief to an analysis of the "but for" exception that has been adopted by the First, Second, Fifth, and Sixth Circuits to save the standing of those plaintiffs whose lack of standing (and relinquishment of their participant status by accepting all of their vested benefits) was not voluntary but instead due to the misconduct or misrepresentations of Defendants. (Doc. # 16). This court need not consider whether Plaintiff satisfies such an *exception* to the general rule, however, given that the court has concluded that the general rule does not deprive Plaintiff of her "participant" status or her standing in this lawsuit.

### 2.   Characterization of Plaintiff's Prayer for Relief

For similar reasons, the court is not persuaded by Defendants' attempt to characterize Plaintiff's prayer for relief as a request solely for legal damages and not as an equitable claim for vested benefits that would give her standing in this lawsuit. *Cf. Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986) (finding former employees to be non-participants because they had received all vested benefits and thus any lawsuit under ERISA could only yield legal damages), *rev'd on other grounds*, *Kayes v. Pac. Lumber*, 51 F.3d 1449, 1454-55 (9th Cir. 1995). Citing a number of cases from outside of the Eleventh Circuit, Defendants maintain that because "'Plaintiff's complaint charges mismanagement and breach of fiduciary duties. [. . ,] [a]ny recovery [] would be damages for those alleged tortious acts, not a benefit under the plan.'" (Doc. #16, at 25 (quoting *Gilquist v. Becklin*, 675 F. Supp. 1168, 1177 (D. Minn. 1987) and citing to other cases). Not only are those decisions not binding on this court, but a careful review of the cases cited by Defendants reveals that they are distinguishable. For example, unlike the Plaintiff in this case, the plaintiffs in Defendants' cited cases either did "not seek 'vested benefits improperly withheld,'" *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1536 (10th Cir. 1993); *Felix v. Lucent Techns., Inc.*, 387 F.3d 1146,1160 (10th Cir. 2004), or had "received in a lump-sum benefits that were *concededly* all to which they were entitled," *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1221 (5th Cir. 1992). In this case, as outlined above in Section III.B.1, Plaintiff seeks *additional* vested benefits to which she believes that she is entitled based upon UABW's alleged misinterpretation of the Plan terms. Thus, even if Defendants' citations were binding authority - which they are not - they nonetheless are unpersuasive because they are distinguishable.

17

Although the court recognizes, as the Fifth Circuit has observed, that "whether a claim is for vested benefits is not always apparent" and the "distinction between 'benefits' and 'damages' is not clear," *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 349 (5th Cir. 1989), the court nonetheless finds that in this case at least one of Plaintiff's contentions in this case plainly seeks benefits and not damages. Plaintiff alleges that Defendants failed to correctly compute contributions to the Plan and, for that reason, Plaintiff was not correctly remunerated for any shortfall in her vested benefits. (*E.g.*, Doc. # 18, at 19; Doc. # 1, at Count One). Thus, the plain language of Plaintiff's allegations places her squarely in the category of persons with standing because she is a former employee with a colorable claim for vested benefits. *See also Harzewski v. Guidant Corp.*, 489 F.2d 799, 804-05 (7th Cir. 2007) (Posner, J.)(holding that plaintiffs' request for an amount of money was a permissible ERISA remedy as "relief to which the plan documents themselves entitle the participant" because plaintiffs' claim was for money that "should have been [in the account] had the Plan honored the employee's entitlement").[11]

---

[11]   Although the court observes - as Plaintiff's point out - that Defendants' current characterization of Plaintiff's request for relief as a request for damages and not benefits appears to run contrary to their earlier position in this litigation that Plaintiff seeks, "in essence, to enforce the terms of the agreement under the benefit plan," (*Compare* Doc. # 16, at 26-28 *with* Doc. # 11, at 5-7), the court declines to consider Plaintiff's argument that Defendants should be judicial estopped from asserting inconsistent positions. Moreover, the court expressly declines to determine, at this time, whether Plaintiff has standing to pursue other claims for which the relief sought may be characterized as legal damages.  Defendants argue - almost as an afterthought:

> to the extent the court finds that any of the relief sought by Plaintiff is a vested benefit for which Plaintiff has standing to sue under ERISA, such a finding would not afford Plaintiff standing to seek other relief which the Court considered legal damages, and any claims or causes of action for such damages should be dismissed with prejudice. *See Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F. 2d 1406, 1411 n. 7 (holding that "[i]n addition to equitable relief, plaintiffs' complaint seeks legal damages.  To the extent plaintiffs seek legal damages, they lack standing. *Kuntz,* 785 F.2d 1411.").

### 3. Plaintiff's Prior Knowledge of Defendants' Alleged Wrongful Calculation of Benefits

Finally, Defendants spend considerable time attempting to craft an argument that Plaintiff cannot have standing because her 2002 and 2005 complaints about UABW's interpretation of the Plan indicate that she had full knowledge of the alleged ERISA violations prior to accepting benefits from the Plan.[12]   While acknowledging that case law does indeed confer standing on an employee who initially accepted a lump sum distribution of benefits but later discovered additional benefits to which she may be entitled, Defendants nonetheless contend that this court should deprive Plaintiff of that standing based upon the fact that she had knowledge of the alleged miscalculation of her benefits prior to the termination of her employment and prior to the acceptance of her lump sum payment.   Defendants' argument appears to be a request that this court to create a policy exception to the general rule based upon Defendants' belief that Plaintiff should not have standing to bring her action because her situation is "one of her own making."   (Doc. # 16, at 40, 44).[13]

_____

(Doc. # 16, at 28-29; Doc. # 19, at 7 n.3). That argument - which consists of nothing more than the sentence replicated above - has not been fully briefed and is not appropriately before the court at this time.   Nonetheless, the court encourages Plaintiff to take a close look at the allegations and claims pled in her complaint and to consider whether those averments can - and should be - revised.

[12] This "knowledge" argument appears to be analytically distinct from an "exhaustion" argument under ERISA.   Although the parties mention an ERISA exhaustion requirement in the briefing, the issue does not appear to be fully addressed or ripe for a ruling by the court.

[13] Frankly, it is difficult for the court to ascertain whether Defendants' argument is a request for a new policy exception or a further attempt to pretermit any "but for" exception argument that would allow Plaintiff to bypass the general rule that an employee previously receiving a lump-sum distribution of accrued benefits is no longer a "participant" with standing to sue under ERISA.   *See* discussion of "but for" exception in footnote 9, *supra*.   In fact, the cases cited by Defendants in support of the argument outlined above actually address the application of the "but for" exception to the general rule (that acceptance of a lump sum of accrued benefits deprives a plaintiff of standing), finding the exception to be inapplicable when a Plaintiff had prior knowledge of the alleged wrongdoing before accepting the lump sum payment. (*See* Doc. # 16, at 29-39). These cases are simply not relevant to the court's analysis here because, as outlined earlier in footnote 9, *supra*, this court not need examine the applicability of the exception given that it has concluded that the

Although Defendants argue that "there is no case which has factually considered and then conferred standing under ERISA on a former participant who, without filing an internal claim pursuant to the benefit plan's claims procedure, voluntarily elected to receive a lump-sum distribution of accrued benefits in spite of full knowledge of an alleged ERISA violation," the court likewise cannot find any support in Defendants' cited cases to suggest that "knowledge" should prohibit Plaintiff from falling within the category of "participants" who still have a colorable claim to additional vested benefits after having received a lump sum payment of some benefits.[14] Furthermore, and in any event, Defendants' theory does not appear to flow naturally from the case

_____

general rule does not deprive Plaintiff of standing.

   [14] As Plaintiff aptly states:

   The foundation for the rulings in all of those cases [relied on by Defendants and referenced by the court above] rested upon a finding that the individual plaintiffs had received lump-sum distributions of all vested benefits to which they were entitled. Discussions, if any, of whether they had knowledge of ERISA violations before taking the lump-sum distributions is only predicated on the foundational finding they had received all vested benefits.  The primary issue in those cases was whether the plaintiffs were participants, *i.e.*, whether they had colorable claims to vested benefits. To the extent knowledge, or to put it more accurately, misrepresentation regarding plan amendments, were at issue in those cases, they only came after a finding that the plaintiffs received all of the vested benefits to which they were entitled upon taking a lump-sum distribution.

(Doc. # 18, at 15).

law they cite.[15]  It would indeed be a stretch to rule that Plaintiff has no standing based on this argument, and the court will not create such a rule on its own.

## IV.     Conclusion

As is evident from the court's analysis, the applicable standards of review play a significant role in resolving the current motion in favor of the Plaintiff.  Because the standing issues under ERISA are so closely intertwined with the merits of this controversy, and because the parties have yet to conduct the bulk of discovery that will determine the strength of Plaintiff's case, the court is simply not in a position to make any final determinations on the merits of Plaintiff's claims in order to resolve the standing issues raised by Defendants.  However, the court's subject matter jurisdiction - and specifically Plaintiff's standing to pursue her claims - must be established at all stages of this lawsuit and may be raised by Defendants at any point in this case.  Thus, if at any time it appears that Plaintiff does not have standing and/or cannot succeed on the merits of her claims, nothing in this opinion prevents Defendants from renewing their request to dismiss this case under Rule 12(b)(6) or Rule 56.

Accordingly, based upon the reasons outlined above, the court finds that Defendants' motion to dismiss on the basis of lack of standing is due to be denied.  The court will enter an order consistent with this opinion.

---

[15] Defendants' enthusiastically partisan reading of the case law and the record at times reaches beyond zealous advocacy.  For example, Defendants state that the court in *Laurenzano*, 134 F. Supp. 2d at 191-193, "expressly noted" that "*the plaintiff did not have prior knowledge that the present value of his COLA payments would be excluded from his lump-sum distribution.*"  (Doc. # 19, at 2 (emphasis in original).).  Despite the "expressly noted" phrasing and the emphatic underlining in Defendants' brief, an examination of *Laurenzano* reveals only a discussion of knowledge in relation to application of the statute of limitations and not to the issue of standing.  *Laurenzano*, 134 F. Supp. 2d at 207-10.  No statute of limitations is at issue here.

**DONE** and **ORDERED** this _____19th_____ day of September, 2007.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE